UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: John Herbert Foster, Jr.,         Case No. 15-33626-KLP
            Debtor.         Chapter 13

## <u>MEMORANDUM OPINION</u>

Before the Court are two objections to the exemption claimed by

Debtor John Herbert Foster, Jr.  The Debtor filed a petition initiating this

chapter 13 case on July 20, 2015.  Along with the petition, he filed schedules

as well as the required statement of financial affairs and statement of

monthly income and calculation of commitment period.

The Debtor amended his schedules on November 23, 2015.  On line 10

of Amended Schedule B, which requires a debtor to disclose annuities, the

Debtor listed $103,893.04 in the "Outback Steakhouse, Inc., Partner Equity

Plan, Partner Equity Deferred Compensation Diversified Plan" (the "Partner

Equity Plan") and stated in part that "Debtor's interest [in the Partner

Equity Plan] is excluded from property of the estate pursuant to 11 U.S.C.

§ 541(c)(2)."  In Amended Schedule C, the Debtor claimed a 75% exemption in

"aggregate disposable income" from an anticipated August 2017 distribution

of $103,893.04 from the Partner Equity Plan, basing the exemption on Va.

Code § 34-29.[1]

---

[1] Also referred to herein as Va. Code § 34-29 or § 34-29.

Both the chapter 13 trustee and Margaret S. Foster[2] have objected to the Debtor's claimed exemption of his interest in the Partner Equity Plan. The Court held a hearing on the objections on April 26, 2016, at which the Court received evidence and heard the argument of the parties. At the conclusion of the hearing, the Court took the two objections under advisement.

## FACTS

The Debtor was formerly a managing partner of Outback Steakhouse, Inc. He entered into the Partner Equity Plan in March of 2006. In connection therewith, he executed a document entitled "Partner Equity Deferred Compensation Diversified Plan Document" (the "Plan Document"). The Plan Document provides in its preamble that the Partner Equity Plan is part of an Outback Steakhouse, Inc. effort to "provide nonqualified deferred compensation benefits to Partners to supplement their retirement savings."

---

[2] The Debtor's former spouse, Margaret S. Foster, timely filed two proofs of claim in the Debtor's case. In the first proof of claim, she asserts an unsecured nonpriority claim in the amount of $2,500 and an unsecured priority claim in the amount of $72,500, including a claimed half interest in the Partner Equity Plan. The proof of claim lists the basis for the claim as "Debt incurred in connection with Divorce." The basis for Ms. Foster's assertion that $72,500 is entitled to priority was listed as "Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)." An attachment to the proof of claim stated that the priority portion of the claim represents a half interest in the Partner Equity Plan, and the nonpriority portion of the claim represents attorney's fees, costs and expenses incurred by Ms. Foster in enforcing a prepetition property settlement agreement between the parties, as provided for in that agreement. The validity of Ms. Foster's proof of claim is not before the Court at this time.

The Court notes that in part 4 of the proof of claim, Ms. Foster states that she holds an unsecured nonpriority claim in the amount of $75,000 and a priority claim of $72,500, but on line 5 of the proof of claim, Ms. Foster lists the total amount of her claim as $75,000, with $72,500 being a priority claim and $2,500 a nonpriority claim. The Court assumes that line 5 reflects the actual amounts claimed by Ms. Foster.

In her second proof of claim, Ms. Foster asserts an unsecured nonpriority claim for $18,000. The basis for this claim is an alleged default under the prepetition property settlement agreement between the parties.

The Plan Document also states that the Partner Equity Plan should be "interpreted to comply in all respects with Internal Revenue Code . . . Section 409A and those provisions of the Employee Retirement Income Security Act of 1974 . . . applicable to an unfunded plan maintained primarily to provide deferred compensation benefits for a select group of 'management or highly compensated employees.'"  Additional provisions of the Partner Equity Plan include the following:

> 10.1 <u>Nonassignability</u>.   The benefits provided under the Plan may not be alienated, assigned, transferred, pledged or hypothecated by any person, at any time, or to any person whatsoever. Those benefits shall be exempt from the claims of creditors or other claimants of the Participant or Beneficiary and from all orders, decrees, levies, garnishment or executions to the fullest extent allowed by law. Notwithstanding the foregoing, the Administrator shall have full power and authority to the extent consistent with Code Section 409A and other applicable laws to comply with all liens by the Internal Revenue Service and any bona fide domestic relations orders and to adjust any amounts otherwise payable under the Plan accordingly.

> 10.2 <u>No Right to Company Assets</u>. The benefits paid under the Plan shall be paid from the general funds of the Company, and the Participant and any Beneficiary shall be no more than unsecured general creditors of the Company with no special or prior right to any assets of the Company for payment of any obligations hereunder.

Article 2 of the Plan Document states that, "[f]rom time to time, the Company shall make a Company Contribution to the Plan on behalf of an Eligible Employee or existing Participant in the amount specified in a Participation Agreement with such Participant.  Company Contributions shall be made in the complete and sole discretion of the Company based on

3

the individually negotiated terms of the Participant's employment agreement with the Company." Under Article 4 of the Plan Document, participants in the Partner Equity Plan receive distributions in three installments pursuant to a prescribed schedule. The Debtor received two distributions prepetition, and a final distribution is due to him in August 2017. In Schedule B, the Debtor listed the value of funds remaining in his account established under the Partner Equity Plan to be $103,893.04, which amount is also reflected in the July 31, 2015, statement issued by the Partner Equity Plan.

## CONCLUSIONS OF LAW

There are two issues before the Court relative to the Debtor's interest in the Partner Equity Plan. First, Ms. Foster[3] contends that the Debtor's remaining funds in the Partner Equity Plan should be included as property of his bankruptcy estate, despite the Debtor's assertion to the contrary in Schedule B. Second, Ms. Foster contends that the provisions of Va. Code § 34-29 do not support the Debtor's claim in Schedule C that the Partner Equity Plan is partially exempt. As there would be no reason to address the Debtor's claim of exemption if the Partner Equity Plan is not property of his bankruptcy estate, the Court will first address that issue.

---

[3] At the hearing, the chapter 13 trustee relied on the arguments made by Ms. Foster.

## The Debtor's Interest in the Partner Equity Plan Constitutes Property of the Debtor's Bankruptcy Estate.

Section 541(a)(1) of the Bankruptcy Code, 11 U.S.C. § 541(a)(1),[4]

defines one of the fundamental concepts of bankruptcy law, the existence of

the "bankruptcy estate:"

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The general rule is thus that all property owned by a debtor at the time a

case is commenced becomes property of the bankruptcy estate.  However,

§ 541(c)(2) qualifies that definition by addressing anti-alienation or

nonassignability clauses such as the one contained in § 10.1 of the Partner

Equity Plan:

> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

In other words, an anti-alienation clause that satisfies the conditions of

§ 541(c)(2) may operate to prevent certain trust property from becoming

property of the bankruptcy estate.  The burden is on the Debtor to prove that

the funds at issue are excluded from his bankruptcy estate pursuant to the

provisions of § 541(c)(2).  *See Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 540

(B.A.P. 6th Cir. 2003); *RES-GA Dawson, LLC v. Rogers* (*In re Rogers),* 538

---

[4] All subsequent references to the Bankruptcy Code are to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, unless otherwise noted.

B.R. 158, 161 (Bankr. N.D. Ga. 2015); *In re Wendt*, 320 B.R. 904, 909 (Bankr. D. Minn. 2005); *Pineo v. Fulton (In re Fulton)*, 240 B.R. 854, 862 n.4 (Bankr. W.D. Pa. 1999).

Ms. Foster argues that § 541(c)(2) is inapplicable in the present case because 1) the Partner Equity Plan is not a trust, and 2) the anti-alienation clause of § 10.1 is not "enforceable under applicable nonbankruptcy law." In support of her argument, she cites this Court's recent case of *In re Gnadt*, No. 11-10378-BFK, 2015 WL 2194475 (Bankr. E.D. Va. May 7, 2015). The Debtor counters that under the 2011 decision of *Racetrac Petroleum, Inc. v. Khan* (*In re Khan)*, 461 B.R. 343 (E.D. Va. 2011), the Partner Equity Plan does qualify as a trust.

The facts in *Gnadt* are strikingly similar to those in the instant case. There, the debtor was a participant in a § 409A deferred benefit plan (the "409A Plan") with terms similar to those in the Partner Equity Plan. The 409A Plan in *Gnadt* also contained an anti-alienation clause similar to that in the instant case.

In *Gnadt*, the Court set forth a three-part test to determine whether § 541(c)(2) applies to exclude property from the bankruptcy estate. First, the debtor must have "a beneficial interest in a trust." Second, there must be a "restriction on alienation of the debtor's beneficial interest." Third, "the restriction on alienation [must be] enforceable under applicable non-

bankruptcy law." 2015 WL 2194475, at *6.[5]  This test is not stated in the

alternative, and in order to satisfy it and successfully exclude property from

the bankruptcy estate under § 541(c)(2), a debtor must satisfy each of the

three elements.

The Court in *Gnadt* found that its 409A Plan was not a trust; thus, the

debtor had not satisfied the first element of the three-part test and § 541(c)(2)

was inapplicable.  In reaching this conclusion, the Court applied the Fourth

Circuit's test to determine whether a trust has been established.  In *Kubota*

*Tractor Corp. v. Strack*, the Fourth Circuit held that:

> Under Virginia law, "[a]n express trust is based on the
> declared intention of the trustor," manifested either in writing
> or through the parties' actions. *Leonard v. Counts,* 221 Va. 582,
> 272 S.E.2d 190, 194 (1980); *see also Woods v. Stull,* 182 Va. 888,
> 30 S.E.2d 675, 682 (1944) ("In order to constitute an express
> trust there must be either explicit language to that effect or
> circumstances which show with reasonable certainty that a trust
> was intended to be created."). Although the parties' use of the
> word "trust" is to be given great weight, it is not determinative.
> *See Exec. Comm. v. Shaver,* 146 Va. 73, 135 S.E. 714, 716 (1926);
> *see also Broaddus,* 26 S.E.2d at 36 (Va.1943) (recognizing that
> an express trust can be established without use of any "technical
> words"). All that is necessary is the "unequivocal" intent " 'that
> the legal estate [be] vested in one person, to be held in some
> manner or for some purpose on behalf of another.' " *Old Republic*
> *Nat'l Title Ins. Co. (In re Dameron),* 155 F.3d 718, 722 (4th
> Cir.1998) (quoting *Broaddus,* 26 S.E.2d at 35). At bottom, "[i]f
> the intention is that the money shall be kept or used as a
> separate fund for the benefit of the payor or a third person, a

---

[5] "The courts generally agree that the inquiry is a three-part test: (1) whether the
debtor has a beneficial interest in a trust; (2) whether there is a restriction on alienation of
the debtor's beneficial interest; and (3) whether the restriction on alienation is enforceable
under applicable non-bankruptcy law. *Taunt v. Gen. Ret. Sys. of the City of Detroit (In re
Wilcox),* 233 F.3d 899, 904 (6th Cir. 2000); *Rhiel v. Adams (In re Adams),* 302 B.R. 535, 539
(B.A.P. 6th Cir. 2003); *In re Hunter,* 380 B.R. 753, 764 (Bankr. S.D. Ohio 2008); *Hill v. Dobin,*
358 B.R. 130, 134 (D.N.J. 2006)." *In re Gnadt,* No. 11-10378-BFK, 2015 WL 2194475, at *6
(Bankr. E.D. Va. May 7, 2015).

> trust is created. If[, however,] the intention is that the person
> receiving the money shall have the unrestricted use thereof,
> being liable to pay a similar amount whether with or without
> interest to the payor or to a third person, a debt is created."
> *Broaddus,* 26 S.E.2d at 37.

*Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 498-99 (4th Cir.

2008). Applying the *Strack* test to the facts before it, the Court observed that

the 409A Plan provided that any obligations thereunder were a contractual

liability and that payments were to be made from the general funds of the

company. The Court found this provision to be inconsistent with the

establishment of a trust. Therefore, the Court found § 541(c)(2) to be

inapplicable, since a mandatory element of the three-part test had not been

satisfied.

Despite having determined that § 541(c)(2) was inapplicable because

409A Plan was not a trust, the Court in *Gnadt* dealt a further blow to the

debtor's attempt to exclude the 409A Plan from property of the estate. The

Court found that the anti-alienation clause in the document establishing the

409A Plan was "not an enforceable provision under applicable non-

bankruptcy law," 2015 WL 2194475, at *8, observing that "the Debtor has not

pointed the Court to any language . . . that would make the anti-alienation

language in this plan enforceable."[6].

---

[6] In reaching its conclusion, the Court noted that while ERISA requires anti-alienation language in a qualified trust, as required by §401(a)(13) of the Internal Revenue Code, 26 U.S.C. § 401(a)(13), there is no such requirement for plans established under § 409A of the Internal Revenue Code, 26 U.S.C. § 409A, the governing section for the deferred compensation plan before it. *Id*. Thus, an anti-alienation clause in an ERISA-qualified trust would be "an enforceable provision under applicable non-bankruptcy law," while the same provision in a § 409A trust would not be.

This Court adopts the analysis employed in *Gnadt*. Applying that analysis to the facts of this case leads to the conclusion that in the present case, as in *Gnadt*, § 541(c)(2) is inapplicable, and the Partner Equity Plan is therefore property of the Debtor's bankruptcy estate. The 409A Plan and the Partner Equity Plan are practically identical in all relevant aspects. The 409A Plan provided that any obligations thereunder were a contractual liability and that payments were to be made from the general funds of the company. The Partner Equity Plan, which is self-described as a 409A plan, contains an almost identical provision. Further, the Partner Equity Plan and the 409A Plan contain substantially similar anti-alienation provisions. This Court finds no reason to depart from the analysis of *Gnadt* and finds that the Partner Equity Plan does not constitute a trust[7] and that the non-assignability provision of § 10.1 of the Partner Equity Plan is not "enforceable under applicable nonbankruptcy law."[8]

---

[7] The Court notes that the Court in *In re Gnadt*, 2015 WL 2194475, at *7, cited approvingly the test set forth in *Racetrac Petroleum, Inc. v. Khan (In re Khan)*, 461 B.R. 343 (E.D. Va. 2011), but nonetheless reached the conclusion that the 409A Plan was not a trust and thus constituted property of the estate. Similarly, this Court rejects the Debtor's assertion that *In re Khan* supports the conclusion that the Partner Equity Plan is not property of the estate.

[8] The debtor in *Gnadt* also argued that even if § 521(c)(2) did not apply to keep the deferred compensation plan's funds out of his bankruptcy estate, the funds were nonetheless exempt as a spendthrift trust under Virginia law. The Court, in rejecting this argument, reiterated that the deferred compensation plan was not a trust of any sort under Virginia law. Further, the Court held that even if the 409A Plan could be described as a trust, it "would be a self-settled trust and therefore, unenforceable as against the Debtor's creditors" and the bankruptcy trustee. 2015 WL 2194475, at *9.

## **The Exemption under Va. Code Ann. § 34-29 is Applicable.**

Having determined that the funds to be distributed to the Debtor in

August of 2017 pursuant to the Partner Equity Plan constitute property of

the Debtor's bankruptcy estate, the Court now turns to Ms. Foster's objection

to the Debtor's claim that 75% of those funds are exempt under Va. Code

§ 34-29. The burden is on Ms. Foster to prove that the Debtor's claim of

exemption is improper. Fed. R. Bankr. P. 4003(c). *See also In re Bradby*, 455

B.R. 476, 481 (Bankr. E.D. Va. 2011); *In re Crump*, No. 06-33410-KRH, 2007

WL 1029325, at *1 (Bankr. E.D. Va. Apr. 3, 2007).

The ability of a debtor in bankruptcy to claim an exemption in earned

but unpaid wages pursuant to Va. Code § 34-29[9] has long been recognized in

---

[9] Va. Code Ann. § 34-29 provides:

(a) Except as provided in subsections (b) and (b1), the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed the lesser of the following amounts:

(1) Twenty-five percent of his disposable earnings for that week, or

(2) The amount by which his disposable earnings for that week exceed 40 times the federal minimum hourly wage prescribed by § 206 (a) (1) of Title 29 of the United States Code in effect at the time earnings are payable. In the case of earnings for any pay period other than a week, the State Commissioner of Labor and Industry shall by regulation prescribe a multiple of the federal minimum hourly wage equivalent in effect to that set forth in this section.

(b) The restrictions of subsection (a) do not apply in the case of:

(1) Any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by state law, which affords substantial due process, and which is subject to judicial review.

(2) Any order of any court of bankruptcy under Chapter XIII of the Bankruptcy Act.

(3) Any debt due for any state or federal tax.

(b1) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed:

this District.  *See, e.g., In re Rivenbark*, No. 10-11055-SSM, 2010 WL

2643323, at *2 (Bankr. E.D. Va. June 29, 2010) ("By limiting garnishments to

25% of income . . . the statute effectively creates an exemption for the

remaining 75%.  In bankruptcy, the exemption is most commonly invoked to

protect 75% of compensation that has been earned but not yet paid as of the

---

(1)  Sixty percent of such individual's disposable earnings for that week; or

(2)  If such individual is supporting a spouse or dependent child other than the spouse or child with respect to whose support such order was issued, 50 percent of such individual's disposable earnings for that week. The 50 percent specified in subdivision (b1)(2) shall be 55 percent and the 60 percent specified in subdivision (b1)(1) shall be 65 percent if and to the extent that such earnings are subject to garnishment to enforce an order for support for a period which is more than 12 weeks prior to the beginning of such workweek.

(c)  No court of the Commonwealth and no state agency or officer may make, execute, or enforce any order or process in violation of this section. The exemptions allowed herein shall be granted to any person so entitled without any further proceedings.

(d)  For the purposes of this section:

(1)  The term *"earnings"* means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, payments to an independent contractor, or otherwise, whether paid directly to the individual or deposited with another entity or person on behalf of and traceable to the individual, and includes periodic payments pursuant to a pension or retirement program,

(2)  The term *"disposable earnings"* means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld, and

(3)  The term *"garnishment"* means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

(e)  Every assignment, sale, transfer, pledge or mortgage of the wages or salary of an individual which is exempted by this section, to the extent of the exemption provided by this section, shall be void and unenforceable by any process of law.

(f)  No employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness.

(g)  A depository wherein earnings have been deposited on behalf of and traceable to an individual shall not be required to determine the portion of such earnings which are subject to garnishment.

(emphasis added).

filing date of the petition, as when a debtor files in the middle of a pay period."); *In re Sheeran*, 369 B.R. 910 (Bankr. E.D. Va. 2007) (pursuant to Va. Code § 34-29(a), bankrupt debtor was entitled to exempt 75% of accrued wages earned in exchange for personal services); *In re Hanes*, 162 B.R. 733, 742 (Bankr. E.D. Va. 1994) (debtor entitled to exempt the portion of income allowable under Va. Code § 34-29); *Baum v. United Va. Bank* (*In re Baum)*, 15 B.R. 538, 539 (Bankr. E.D. Va. 1981) (plaintiff debtor "properly exempted wages pursuant to . . . Va Code Ann. § 34-29").  This recognition, acknowledged in case law and generally accepted by trustees and counsel for both debtors and creditors,[10] has not been specifically challenged in this jurisdiction; consequently, this Court has not previously found it necessary to directly rule on whether a debtor in Virginia may exempt prebankruptcy earnings from property of the estate pursuant to Va. Code § 34-29.

---

[10] In two of the cases cited above, the party objecting to the claimed exemption did not question the existence of an exemption in compensation earned by a debtor but not paid at the time of a bankruptcy filing pursuant to Va. Code § 34-29, but instead asserted that the particular disputed funds in those cases did not meet the definition of "earnings" or "disposable earnings" under the statute.  *See In re Rivenbark*, No. 10-11055-SSM, 2010 WL 2643323, at *3 (Bankr. E.D. Va. June 29, 2010) (exemption created by § 34-29 did not extend to tax refunds); *In re Sheeran*, 369 B.R. 910, 914 (Bankr. E.D. Va. 2007) (creditor asserted that profits from a business may not be claimed as wages because exemptible compensation must be paid for personal service rather than as a return on investment).  In *In re Hanes*, 162 B.R. 733 (Bankr. E.D. Va. 1994), the creditor challenged a debtor's exemption in three retirement plans.  The Court found that one of the plans was excluded from the estate pursuant to § 541(c)(2) but found that the debtor was entitled to exempt the portion of the income allowable under § 34-29 from the other two plans.

In *In re Gnadt*, the Chapter 7 trustee conceded "that the sum of $30,154.99 in the Debtor's 409A Plan on the date of the bankruptcy filing represents the product of the Debtor's wages, bonuses and commissions and that, therefore, the Debtor is entitled to amend his State exemptions to claim that 75% of this amount is exempt pursuant to Va.Code § 34-29 (Maximum portion of disposable earnings subject to garnishment)." 2015 WL 2194475, at *3.

Recent decisions from the Western District of Virginia interpreting Va. Code § 34-29,[11] along with decisions of other courts finding that similar statutes do not provide a general wage exemption to debtors in bankruptcy, have created some uncertainty regarding Virginia's wage exemption and compel the Court to more thoroughly examine this issue. After considering the legislative history, the statutory scheme, and relevant case law, the Court concludes that Va. Code § 34-29 enables a debtor to exempt 75% of accrued but unpaid earnings from the bankruptcy estate.

Exemption statutes, including those in Virginia, serve a number of important societal purposes by enabling debtors to protect certain property from the reach of creditors. One commentator has summarized the goals of the exemption statutes as follows:

> The basic themes of exemption laws might be summarized as follows: The debtor must be protected against total poverty without undue prejudice towards claims of creditors through legislation which will not become obsolete quickly. Society has a clear interest in preventing any person from becoming a public charge. By permitting a debtor to retain sufficiency (sic) property to maintain a minimum standard of living, he retains his status as an independent economic unit thereby increasing the chances of rehabilitation. . . . A more prominent policy underlying the exemption laws is the desire to protect the debtor's dependents, ordinarily the members of his family, from undue hardships.

---

[11] *See* text accompanying note 27 *infra.*

Joseph E. Ulrich, *Virginia's Exemption Statutes-The Need for Reform and a Proposed Revision*, 37 Wash. & Lee L. Rev. 127, 129-30 (1980).[12]

Even though exemption laws seek to balance the needs of debtors and their dependents with the rights of creditors, they inherently reflect a public policy in favor of having debtors retain essential property over the satisfaction of creditors' claims. *Id*. at 130.[13]  For that reason, Virginia courts have stated that exemption statutes are to be interpreted liberally in favor of debtors.[14]

The Bankruptcy Reform Act of 1978 created federal exemptions for bankrupt individuals but granted states the authority to preclude their residents from claiming the federal exemptions by authorizing them to opt out of the federal exemptions in favor of state law exemptions.[15]  Virginia is an "opt out" state.[16]  Therefore, a Virginia debtor in bankruptcy may

---

[12]In Joseph E. Ulrich, *Virginia's Exemption Statutes-The Need for Reform and a Proposed Revision*, 37 Wash. & Lee L. Rev. 127, 129-30 (1980), the author cites with approval William T. Vukowich, *Debtors' Exemption Rights*, 62 Geo. L.J. 779, 781-88 (1974).

[13]*See also* Michael P. Cotter, *The Failure of the Virginia Exemption Plan*, 21 Wm. & Mary L. Rev. 851 (1980).

[14] "Virginia's policy is to apply bankruptcy exemptions liberally in favor of debtors, *Roberts v. County of Henrico Fed. Credit Union,* 709 F.2d 275 (4th Cir. 1983), *Wilkinson v. Merrill,* 87 Va. 513, 12 S.E. 1015, 1016 (1891), and where there is doubt as to whether property is exempt, it should be resolved in favor of the exemption.  *In re Perry*, 6 B.R. 263 (W.D. Va. 1980).*" Bass v. Hall*, 79 B.R. 653, 656 (W.D. Va. 1987).  *See also S. Hill Prod. Credit Ass'n v. Hudson*, 174 Va. 284, 287, 6 S.E.2d 668, 669 (1940).

[15] Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 522, 92 Stat. 2549 (1978), codified at 11 U.S.C. § 522(b) (1979).

[16] "No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act (Public Law 95-598), except as may otherwise be expressly permitted under this title." Va. Code § 34-3.1.

14

generally only claim as exempt what is allowed under Virginia and federal nonbankruptcy law.[17]

Title 34 of the Code of Virginia, entitled "Homestead and Other Exemptions," sets forth most of the exemptions available to Virginia debtors. Section 34-29, commonly referred to as the "wage exemption," is included in Title 34.  This statute establishes a limit to the amount of an individual's "disposable earnings," as defined by § 34-29(d)(2), that shall be "subjected to garnishment."  The term "garnishment" is defined as "any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."  Va. Code § 34-29(d)(3).

The current version of § 34-29 was enacted in 1970 after Congress passed the Consumer Credit Protection Act, Pub. L. 90-321, 82 Stat. 146 (1968) (the "CCPA").  The CCPA preempts state law in the area of wage garnishments, requiring all states to recognize a minimum restriction on garnishment, limiting the withholding of earnings in most cases to the lesser of 25% of disposable earnings per week or the amount by which disposable earnings for a week exceed 30 times the minimum hourly wage.[18]  In § 34-29, Virginia adopted the language of the CCPA almost verbatim.[19]

---

[17] *In re Zaidi*, 293 B.R. 861, 862 (Bankr. E.D. Va. 2002) ("debtors may claim only those exemptions allowed under § 522(b)(2) [redesignated as § 522(b)(3) in 2005]. These include those allowable under state exemptions."); *In re Scott*, 199 B.R. 586, 588 (Bankr. E.D. Va. 1996) ("residents of Virginia filing bankruptcy petitions may claim only those exemptions allowable under state law and general Federal law").

[18] 15 U.S.C. § 1673.

[19] 15 USC § 1672 includes definitions of "earnings," "disposable earnings" and "garnishment."  These terms are similarly defined in Va. Code § 34-29(d).

Prior to the Virginia legislature's adoption of the language of the CCPA, Va. Code § 34-29 had included a schedule setting forth minimum and maximum amounts of "wages or salary" that would be "exempt from distress, levy, garnishment or other process . . . ." Va. Code Ann. § 34-29 (1960). An even earlier version of the statute provided that "wages or salary owing or to be owing to a  . . . householder or head of a family, shall be exempt from distress, levy, garnishment or other process to the extent of seventy-five percentum of such wages or salary . . . ." Va. Code § 34-29 (1948). Before the adoption of the 1970 version of the statute, which replaced the language exempting earnings from "distress, levy, garnishment or other process" with a limitation on the amount "which is subjected to garnishment," the language in the statute made it clear that a portion of an individual's wages were protected from *all* forms of creditor process. Such language would, in turn, allow a debtor in bankruptcy to claim this "wage exemption" pursuant to § 522(b)(3)(A) of the Bankruptcy Code.[20] The question, therefore, is whether by replacing the pre-1970 version of the statute with the language "subjected to garnishment," the Virginia legislature eliminated the availability of this exemption to a debtor in bankruptcy.

---

[20] "Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate the . . . property that is specified under subsection (d), unless the State law that is applicable to the debtor . . . specifically does not so authorize." 11 U.S.C. § 522(b). Generally, the exemption statutes, including those most often claimed in bankruptcy, do not specifically refer to their applicability in bankruptcy but instead include language providing that the householder shall be entitled to "hold [property] exempt from creditor process." *See*, *e.g.*, Va. Code Ann. § 34-4 ("homestead exemption") and Va. Code Ann. § 34-26 ("poor debtor's exemption"). Pursuant to 11 U.S.C. § 522(b)(3)(A), "any property that is exempt under . . . State or local law" is excluded from the bankruptcy estate. *See Mayer v. Nguyen (In re Nguyen)*, 211 F.3d 105, 107 (4th Cir. 2000) (applying prior version of § 34-29(b)(3)).

The circumstances leading to the revision of § 34-29, along with the content and context of the revised statute, indicate that the Virginia General Assembly did not intend to proscriptively limit the "wage exemption" to nonbankrupt debtors.  Virginia's "wage exemption" statute was amended solely in order to comply with the CCPA's mandatory limitations on wage garnishments; it does so by mirroring the language of 15 U.S.C. § 1673.  The conclusion that the legislature did not further intend to prevent the application of § 34-29 in bankruptcy is evident when one considers that the revision was enacted in the legislative session occurring shortly after the CCPA's effective date, tracks the language of 15 U.S.C. § 1673 nearly word for word and, according to a report commissioned by Virginia's General Assembly, was prompted only by the mandates of the CCPA.[21]

---

[21] In 1968, the Virginia General Assembly directed the Virginia Code Commission to prepare a report of recommendations to revise certain titles of the Code of Virginia, including Title 34, together with suggested legislation necessary to carry such recommendation into effect.  The report, entitled "Revisions of Titles 34, 35, 36, 42 and 43 of the Code of Virginia, Report of the Virginia Code Commission to the Governor and the General Assembly of Virginia," dated October 1, 1970 (the "1970 Commission Report"), "reflect[s] the Commission's careful consideration of all recommendations and suggestions either brought to its attention or resulting from its own observations, inquiries and deliberations." *Id*. at 2. The Commission referred to existing restrictions in the Constitution of Virginia affecting Title 34 but noted that "[t]he proposed new constitution would . . . [grant] the General Assembly broader powers . . .  and [permit] timely statutory changes to reflect economic and social change." *Id*.  The Commission indicated that extensive revisions to Title 34 would need to await adoption of the proposed new constitution and offered only limited amendments to Title 34, one of which was to change § 34-29 "to conform its provisions with the requirements of the Federal Truth-In-Lending Act." *Id*. (The Truth in Lending Act ("TILA"), codified at 15 U.S.C. 1601 et seq., was enacted on May 29, 1968, as title I of the Consumer Credit Protection Act, Pub. L. 90-321. TILA, implemented by Regulation Z, 12 C.F.R. Pt. 1026, became effective July 1, 1969.)  The proposed Virginia legislation included a bill to amend and reenact § 34-29, a provision that the Commission said related to "wages or salaries *exempted from distress, levy, garnishment or other process*."  1970 Commission Report at 4 (emphasis added).  The Commission offered language tracking that of 15 U.S.C. § 1673.  Pursuant to the recommendation of the Commission, the proposed legislation was adopted and became effective on October 1, 1970.  Nothing in the 1970 Commission Report

Although some courts have held that the CCPA was not intended to *create* an exemption in bankruptcy,[22] it does not follow that by that by adopting the language of 15 U.S.C. § 1673, the Virginia General Assembly intended to *eliminate* the availability of the wage exemption in bankruptcy.[23] In fact, all indications are that this was not the intent of the legislature.

Not only does the legislative history weigh in favor of allowing the wage exemption in bankruptcy, but further support is also found in the language of the statute itself.  When the Virginia legislature enacted what is

---

evidences the intent to do anything other than amend § 34-29 to comply with the requirements of the CCPA, and the preamble to the proposed revision stated that the amendments related to "wages or salaries exempted from distress, levy, garnishment or other process."  1970 Commission Report at 4.  The Commission emphasized that significant substantive changes to Title 34 would need to await adoption of the new state constitution. *Id*. at 2.  Accordingly, the 1970 Commission Report indicates that the purpose of the revision was simply to comply with the mandates of the CCPA but not to restrict the exemption to a nonbankrupt debtor or effectuate any other substantive change.

[22] *See, e.g., In re Sanders*, 69 B.R. 569, 571 (Bankr. E.D. Mo. 1987) (citing cases construing the Supreme Court's comments in *Kokoszka v. Belford*, 417 U.S. 642 (1974) to mean that the CCPA's restrictions on garnishment were not intended to establish a wage exemption in bankruptcy);  *see also Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 796 (E.D. Tenn. 1998) ("*Kokoszka* holds that the restrictions on garnishment of disposable earnings in 15 U.S.C. §1673 of the CCPA do not constitute an exemption of such earnings cognizable in bankruptcy.").  *Kokoszka* was decided after the revision to Va. Code § 34-29 and involved the question of whether 15 U.S.C. § 1673 created a bankruptcy exemption in a debtor's tax refund.

[23] *See In re Sanders*, 69 B.R. at 571 ("[B]ecause Congress made title III [of the CCPA] preemptive of all state laws that were less protective of debtors, *see* 15 U.S.C. §§ 1673(c), 1675, 1677 (1976), many states amended their laws to conform to title III.  If these state laws—which supplanted wage *exemptions*—are now held to be something less than exemptions, in line with recent court interpretations of *Kokoszka*, protection of debtors' wages will be lost in bankruptcy although state legislatures clearly had no such intent.") (citing William T. Vukowich, *Debtors' Exemption Rights Under The Bankruptcy Reform Act,* 58 N.C. L. Rev. 769, 791 n.192 (1980)).

The Supreme Court has resisted finding a significant departure from historical bankruptcy practice without a clear legislative directive, noting in *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992), that it would be "reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."  Interpreting the 1970 revisions of § 34-29 to no longer provide an exemption of wages to a bankrupt debtor would create a major departure from the practice that existed prior to that time, yet there is no record of any related discussion in Virginia's legislative history.

essentially the current version of § 34-29, it included the following sentence:

"The *exemptions* allowed herein shall be granted to any person so entitled

without any further proceedings."  Va. Code § 34-29(c) (emphasis added).[24]

By contrast, the word "exemption" does not appear in the garnishment

restriction language of the CCPA.  The inclusion of the term "exemption" in

Virginia's statute is noteworthy in light of how the word is defined under

§ 34-1 of Title 34:

> "Creditor process" means *all* methods used by creditors to collect
> unsecured debts. . . . "Exempt" means protected from *all* forms of
> creditor process.  "Exemption" means protection from all forms
> of creditor process. . . . .

Va. Code § 34-1 (emphasis added).  Therefore, the language of § 34-29,

considered in the context of § 34-1, evidences the intent to protect disposable

earnings from *all* forms of creditor process.

Similarly, other exemption provisions in Title 34 of the Virginia Code

reflect that the Virginia legislature gave no consideration to the thought that

revising § 34-29 would thereafter limit its applicability to garnishment

proceedings occurring outside of bankruptcy.  Despite the revisions to § 34-

29, other statutes continue to specifically acknowledge that § 34-29 protects

wages generally from *any* form of creditor process.[25]  Had the Virginia

---

[24] Although there is scant legislative history available that would shed light upon the intentions of the legislature, other than the need to comply with the mandates of the CCPA, the inclusion of this language was likely due to the simultaneous repeal of Va. Code Ann. § 34-30, which had provided a procedure by which a judge would issue a certificate authorizing declaring a debtor's wages exempt and authorizing the debtor's employer to adhere to the limitations set forth in Va. Code § 34-29.

[25] *See, e.g.*, Va. Code Ann. § 34-4 ("Every householder shall be entitled, in addition to the property or estate exempt under . . . § 34-29 . . . , to hold exempt from creditor process . . .

General Assembly intended to do anything more than adopt the CCPA's

monetary limitations, it would have correspondingly amended these

statutes.[26]

Courts in "opt out" states deciding whether a bankrupt debtor may

exempt earnings from property of the estate pursuant to statutes similar to

Va. Code § 34-29 have split.  A number of courts have found the garnishment

statutes of their states do provide exemptions in bankruptcy.  *See, e.g., Forker*

*v. Irish (In re Irish)*, 311 B.R. 63, 67 (B.A.P. 8th Cir. 2004) ("a bankruptcy

proceeding easily falls within the ambit of Iowa's adopted definition of

'garnishment,' which is any 'legal or equitable procedure through which the

earnings of any individual are required to be withheld for payment of any

debt.'"); *In re Haraughty*, 403 B.R. 607, 613-614 (Bankr. S.D. Ind. 2009)

---

."); Va. Code Ann. § 34-2 ("An injunction may be awarded to . . . prevent the wages *exempted* by § 34-29 from being garnished *or otherwise collected by an execution creditor.*") (emphasis added); Va. Code Ann. § 34-4.2 ("Where a parent supports a dependent minor child . . . that parent can hold exempt from wage garnishment, *in addition to the property or estate that he is entitled to hold exempt from creditor process under . . . 34-29* . . . an additional amount for the support of the child . . . .") (emphasis added); Va. Code Ann. § 34-32 ("No person shall institute . . . proceedings . . . or shall assign or transfer . . . any claim for debt . . . held by him against a resident of the Commonwealth . . . for the purpose of having payment of the same . . . enforced out of the wages exempted by § 34-29 . . . in courts . . . in any other state than the Commonwealth, or to send out of the Commonwealth . . . any claim or debt against any resident thereof . . . *with the intent of depriving such person of the right to have his wages exempt from distress, levy or garnishment according to the provisions of § 34-29.*") (emphasis added).

[26] The 1970 Commission Report (*see supra* note 21), included a mandate that the Commission not only suggest legislation necessary to carry out its recommendations but also to suggest "substantive changes in each title being revised and submit separately legislation purposed to carry out each such recommendation". *Id.* at 1.  Despite this mandate, the Commission suggested no changes to any other of the provisions of Title 34 containing references to § 34-29.

Under the "harmonious-reading canon," provisions included in a text "should be interpreted in a way that renders them compatible, not contradictory."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) (cited in *Gray v. Martin*, No. 13-73-ART, 2013 WL 6019335 (E.D. Ky. Nov. 13, 2013)).  A more harmonious interpretation of the current provisions of Title 34 would be to recognize the continued existence of the "wage exemption" in bankruptcy.

(Indiana statute modeled after CCPA permits bankrupt debtors to claim an exemption in earned but unpaid wages); *In re Urban*, 262 B.R. 865, 867 (Bankr. D. Kan. 2001) ("A review of the [Kansas exemption statute] . . . makes clear that Kansas has a tradition of wage exemption and that the legislature intended to carry that tradition forward with the enactment of the present statute in 1970."); *In re Sanders*, 69 B.R. 569, 576 (Bankr. E.D. Mo. 1987) ("the 'opt-out' statute itself clearly implies that bankrupt and non-bankrupt debtors are to be treated alike in terms of the exemptions available to them. Since the non-bankrupt debtor is able to exempt wages under the Missouri garnishment statute, so should the bankrupt debtor be able to do so."); *In re Smith*, 23 B.R. 708, 709 (Bankr. D. Md. 1982) ("When accrued but unpaid wages are due to the Debtor at the time of the filing of the bankruptcy petition, it is only appropriate to apply the garnishment exemptions since they are designed for such relatively ephemeral and transitory property."). Other courts have interpreted state garnishment statutes modeled after 15 U.S.C. § 1673 as establishing only a restriction on wage garnishment outside of bankruptcy and not an exemption available in bankruptcy. *See, e.g.*, *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786 (E.D. Tenn. 1998); *Riendeau v. Canney (In re Riendeau)*, 293 B.R. 832 (D. Vt. 2002), aff'd, 336 F.3d 78 (2d Cir. 2003).

Recent decisions of the bankruptcy court in the Western District of Virginia have found that in the absence of a pending garnishment, Va. Code

§ 34-29 does not provide a wage exemption in bankruptcy.  In *In re Kluge*, No.
11-61517 (Bankr. W.D. Va. Oct. 3, 2011), the court denied an exemption in
"[w]ages due but not received" pursuant to § 34-29 because no "order [had]
been issued pursuant to a judicial procedure ordering a third party to
withhold payment of the Wages to the Debtors." *Id.* at 5.  Subsequently, the
court in *In re Pierce*, No. 15-71047 (Bankr. W.D. Va. Dec. 30, 2015), citing
*Kluge*, concurred that § 34-29 applies only to earnings that are subject to
garnishment, stating that because there was "no garnishment at issue in this
case, Section 34-29 simply does not apply to afford the Debtor the relief
claimed in her exemption." *Id.* at 4.[27]

*Kluge* and *Pierce* notwithstanding, this Court rejects the proposition
that in the absence of a pending garnishment at the time of a bankruptcy
filing a debtor may not exempt wages pursuant to Va. Code § 34-29.  Such an
interpretation, which would allow the wage exemption only if the debtor
happened to be experiencing a wage garnishment at the time of his
bankruptcy filing, makes no sense as a practical matter.[28]  Denying the wage
exemption to a debtor in bankruptcy results in a disparity between
individuals not filing bankruptcy and those who do file by affording lesser

---

[27] The court was not persuaded by the language in a number of earlier Virginia cases
that recognized the authority of debtors to exempt unpaid wages in bankruptcy under § 34-29,
including *In re Musgrove*, 7 B.R. 892 (Bankr. W.D. Va. 1981), noting that they offered only
"conclusory statements without any analysis or elaboration of the issue of the impact of a lack
of garnishment, and they provide little guidance to the case at hand." *In re Pierce*, No. 15-
71047, p. 3 (Bankr. W.D. Va. Dec. 30, 2015).

[28] *See In re Urban*, 262 B.R. 865, 869 (Bankr. D. Kan. 2001) ("Just as a writ of
execution need not be pending against a debtor's homestead to enable him to claim the
homestead exemption in bankruptcy, pre-existing process should not be a prerequisite to a
bankruptcy debtor's right to claim the . . . wage exemption . . . .").

rights to those in bankruptcy, which seems contrary to the purpose of the

statute.[29]  A disparity between individuals filing bankruptcy based solely on

whether or not garnishment proceedings were pending at the time of filing

seems even more untenable.[30]

Furthermore, the presence of language in Va. Code § 34-29 limiting the

amount of wages "subject to garnishment" without specifically providing

additional protections against all forms of creditor process does not support

the conclusion that the restriction is not an exemption applicable in

bankruptcy since a judgment creditor may generally recover a debtor's

unpaid wages only by instituting garnishment proceedings pursuant to Va.

Code § 8.01-511. *See In re Haraughty*, 403 B.R. at 611 ("In the Court's

opinion, it would make little sense to protect unpaid wages from forms of

process that are simply inapplicable."); *In re Urban*, 262 B.R. at 868 ("[T]his

Court considers the argument that [the limitation on wage garnishment] is a

---

[29] *See Forker v. Irish (In re Irish)*, 311 B.R. 63, 67 (B.A.P. 8th Cir. 2004).  *See also In re Sanders*, 69 B.R. 569, 574 (Bankr. E.D. Mo. 1987) ("[I]t would be highly anomalous, if not unjust, if the position of creditors were improved upon a debtor's filing bankruptcy.").

It has been suggested that Virginia chose to opt out of the federal exemptions of 11 U.S.C. § 522(d) because the federal exemptions are more generous than those granted under Virginia law and where an exemption scheme favors one filing bankruptcy, the number of bankruptcy filings would increase.  Joseph E. Ulrich, *Virginia's Exemption Statutes-The Need for Reform and a Proposed Revision*, 37 Wash. & Lee L. Rev. 127, 128-29 (1980).  On the flip side, if state law exemptions were more generous than the federal exemptions, creditors would be more likely to file involuntary petitions against the debtor.  *Id*. at 128 n.8.  It would seem, therefore, that the legislature's apparent goal of discouraging bankruptcy filings would be best served by having the Virginia exemptions provide a debtor with the same property in or out of bankruptcy.

[30] In *In re Sanders*, 69 B.R. at 573, the chapter 7 trustee argued that even if the Missouri garnishment statute could provide an exemption for prepetition wages, language in the statute limiting the amount that may be "subjected to garnishment" resulted in the exemption being available only in cases where a garnishment is pending at the time of bankruptcy.  The Court rejected the Trustee's argument, stating that "[i]f that principle was a correct statement of the law . . . bankrupts not subject to attachment or execution proceedings at the time of filing would lose their exemptions."  *Id*. at 573.

restriction not an exemption to be a distinction without a difference.

Garnishment is the only method of 'executing' on a debtor's wages available

in this state.").  Prohibiting additional forms of creditor process that are not

available to a creditor in any event serves no purpose.[31]

Some courts have pointed out that the definition of "garnishment"

included in state statutes utilizing the language of 15 U.S.C. § 1673 supports

the contention that the protections included therein are available to bankrupt

debtors.  Va. Code § 34-29(d)(3), like other similar statutes, defines

"garnishment" as "any legal or equitable procedure through which the

earnings of any individual are required to be withheld for payment of any

debt." Bankruptcy falls within that definition, as it is a procedure whereby a

debtor's earnings would be used to satisfy a debt.  *See Forker v. Irish (In re

Irish)*, 311 B.R. at 68; *In re Urban*, 262 B.R. at 869.[32]  Similarly, a bankruptcy

trustee's duty to administer assets, including earned but unpaid income, for

---

[31] *See also In re Mayer*, 388 B.R. 869 (Bankr. N.D. Ill. 2008):
Unlike other assets that might be subject to levy, unpaid wages are neither in the possession of the debtor nor owned by the debtor.  Without a statute allowing a creditor to pursue the debtor's entitlement to such wages, they would be immune from collection. . . . [T]he nature of unpaid wages, as choses in action immune from . . . common law methods of satisfying judgments, makes the broader exemption language employed in other Illinois exemption provisions unnecessary.  The absence of references to assignment, attachment, levy, execution, and seizure is therefore no indication that the Illinois General Assembly intended unpaid wages to be subject to collection through these methods.
*Id*. at 872-73 (citations omitted).
[32] "It is difficult to fathom what the means of effecting the transfer of a debtor's property to the bankruptcy estate is if it cannot be considered a 'legal or equitable procedure.' Thus, this Court concludes that the filing of bankruptcy is a 'legal or equitable procedure' creating an estate entitled to collect these wages 'for the payment of any debt,' subject to the restrictions or exemptions . . . that the debtor may avail himself of . . . ."  *In re Urban*, 262 B.R. at 869.

the benefit of creditors would not exist but for the Bankruptcy Code, and the trustee's ability to do so is supported and enabled under its provisions.  This is surely a "legal or equitable procedure through which the earning of [an] individual are required to be withheld for payment of any debt."[33]

The reasoning and conclusions of the courts in *In re Urban* and *In re Haraughty*, finding that exemption provisions similar to Va. Code §34-29 provide a wage exemption available to an individual in bankruptcy, are sound.  Prior decisions of this Court, conduct of the Virginia General Assembly, the language of the statute (including the other provisions of Title 34) as well as a long-standing practice of construing Virginia's exemption statutes liberally,[34] support the same conclusion in this case.  Therefore, the Court finds that Va. Code § 34-29 permits a debtor in bankruptcy to exempt earned but unpaid wages subject to the limitations contained in its provisions.

Having found that § 34-29 permits a debtor in bankruptcy to exempt accrued but unpaid earnings, the Court must determine whether the distribution that the Debtor is entitled to receive in August of 2017 qualifies

---

[33] In *Kokoszka v. Belford*, 417 U.S. 642, 650-51 (1974), the Supreme Court indicated that Congress did not intend to create a separate bankruptcy exemption when it enacted 15 U.S.C. § 1673.  Nevertheless, whether Congress intended to create an exemption for wages when it enacted § 1673 is not dispositive of the Virginia legislature's intent when it borrowed the language of 15 U.S.C. § 1673 and incorporated it into § 34-29.  *See Forker v. Irish (In re Irish)*, 311 B.R. at 66-7 (an opt-out state could adopt the CCPA as a state exemption regardless of the purpose of the CCPA and the Supreme Court's decision in *Kokoszka*); *In re Urban*, 262 B.R. at 870; *In re Haraughty*, 403 B.R. at 613.

[34] *See* note 14 supra.  *See also In re Stewart*, 360 B.R. 132, 138 (Bankr. E.D. Va. 2006).

as "earnings" under the definition contained in the statute.[35]  Under § 34-

29(d)(1), the term 'earnings' means "compensation paid or payable for

personal services, whether denominated as wages, salary, commission, bonus,

payments to an independent contractor, or otherwise, whether paid directly

to the individual or deposited with another entity or person on behalf of and

traceable to the individual, and includes periodic payments pursuant to a

pension or retirement program . . . ."  On its face, the distribution appears to

fall within this definition, since it represents compensation for past services

of the Debtor.

The question of whether a deferred compensation payment constitutes

"earnings" and is thus exemptible under Va. Code § 34-29 was answered in

the affirmative by this Court in *In re Gnadt*.  The Court noted that the

Fourth Circuit has held that

> Pre-petition assets . . . are those assets rooted in the
> debtor's pre-petition activities, including any proceeds
> that may flow from those assets in the future. These
> assets belong to the estate and ultimately to the creditors.
> Post-petition assets are those that result from the debtor's
> postpetition activities and are his to keep free and clear of
> the bankruptcy proceeding.

2015 WL 2194475, at *5 (quoting *Andrews v. Riggs Nat'l Bank* (*In re*

*Andrews*), 80 F.3d 906, 910 (4th Cir. 1996)).  Expanding upon this definition,

the Court observed that the rule has "been consistently applied by the courts

---

[35] There is no doubt that accrued but unpaid wages owed to a debtor upon the
commencement of a bankruptcy generally constitute property of the bankruptcy estate
pursuant to 11 U.S.C. § 541(a)(1).  *Aveni v. Richman (In re Aveni)*, 458 F.2d 972, 973 (6th
Cir. 1972) (holding that wages that have accrued but are unpaid as of the date of the filing of
a petition are property of the estate).

in the context of deferred employee compensation." 2015 WL 2194475, at

*5.[36]  The Debtor's deferred compensation held in the Partner Equity Plan

represents funds to which the Debtor is entitled because of his prepetition

activities. Following the analysis set forth in *In re Andrews* and *In re Gnadt,*

the Court finds that the funds to be distributed to the Debtor from the

Partner Equity Plan in August 2017 constitute earnings covered by Va. Code

§ 34-29.  Accordingly, 75% of those earnings may be exempted by the Debtor

in his bankruptcy case.

## CONCLUSION

On the basis of the foregoing, the Court finds that the Debtor has not

met his burden of establishing that the Partner Equity Plan is not property of

the bankruptcy estate and must include those earnings in his bankruptcy

estate.  The Court further finds that Ms. Foster and the chapter 13 trustee

have not met their burden of proving that the Debtor's exemption of the

Partner Equity Plan proceeds was improper.  Therefore, the objections of Ms.

Foster and the chapter 13 trustee to the Debtor's claim of exemption are

overruled.  A separate order will be entered.

Signed: August 12, 2016



_____/s/ Keith L. Phillips_____
United States Bankruptcy Judge
Entered on Docket:  August 12, 2016

---

[36] "*See In re Ryerson,* 739 F.2d 1423, 1425 (9th Cir.1984)(lump sum severance payment from pre-petition contract—"by including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time"); *In re Powell,* 511 B.R. 107, 112 (Bankr. C.D. Ill. 2014) (debtor's interest in profit sharing plan—"where the future payment is linked, at least in part, to services rendered prepetition, the 'sufficiently rooted' inquiry is ordinarily satisfied"); *In re Jokiel,* 447 B.R. 868, 872–73 (Bankr. N.D. Ill. 2011) (severance payment was sufficiently rooted in debtor's pre-bankruptcy past)." 2015 WL 2194475, at *5.

Copies:

Laura Taylor Alridge
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Veronica D. Brown-Moseley
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Amanda Erin DeBerry
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Emily C. Fort
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Mark C. Leffler
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Stephen F. Relyea
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA 23230-1588

Barry W. Spear
Boleman Law Firm, P.C.
Convergence Center III
272 Bendix Road Suite 330
Virginia Beach, VA 23452

Carl M. Bates
P. O. Box 1819
Richmond, VA 23218

Chapter 13 Trustee's Office
P.O. Box 1819
Richmond, VA 23218

John Herbert Foster, Jr.
8008 Stonemeade Drive
Henrico, VA 23231

Thomas H. Gays, II
Saunders, Patterson & Mack
9100 Arboretum Parkway Suite 300
Richmond, VA 23236